**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000427
31-JUL-2015
07:45 AM**

CAAP-14-0000427

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
EUGENE PARIS, JR., also known as
EUGENE J.E. RIVERA, JR., Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-0191)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Leonard, JJ.)


Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Eugene Paris, Jr. (Paris) with second-degree escape, in violation of Hawaii Revised Statutes (HRS) § 710-1021 (2014).[1] The charge stemmed from Paris's failure, while he was on extended furlough, to return to the Laumaka Work Furlough Center (Laumaka) as directed by the Laumaka staff and after his furlough pass expired. After a jury trial, Paris was found guilty as charged. The Circuit Court of the First Circuit (Circuit Court)[2] sentenced Paris to five years of imprisonment to

---

[1] HRS § 710-1021 provides in relevant part: "(1) A person commits the offense of escape in the second degree if the person intentionally escapes from a correctional or detention facility or from custody."

[2] The Honorable Rom A. Trader presided.

run concurrently with other terms being served and entered its Judgment on January 14, 2014.

On appeal, Paris contends that: (1) the felony information charging him with second-degree escape was "fatally insufficient"; (2) there was insufficient evidence to support his conviction; (3) the Circuit Court erred in denying his motion for mistrial which was based on the prosecutor's closing argument; (4) the Circuit Court erred in instructing the jury; and (5) the Circuit Court erred by failing to apply the doctrine of judicial estoppel. We affirm.

BACKGROUND

Paris was convicted of Promoting a Dangerous Drug in the Second Degree. He was sentenced in 2006 to ten years of imprisonment and was committed to the custody of the Department of Public Safety for incarceration. Paris was incarcerated at the Oahu Community Correctional Center (OCCC) and his maximum term of imprisonment was scheduled to expire on August 11, 2015.

Paris was granted furlough privileges before his maximum term of imprisonment expired. On June 14, 2011, Paris entered into a "Furlough Agreement" with the State. Noel Villanueva (Villanueva), Paris's case manager at Laumaka, which was part of OCCC, reviewed the terms and conditions of the Furlough Agreement with Paris. Paris acknowledged his understanding of the Furlough Agreement by placing his initials after each term and condition and by signing the Furlough Agreement.

As part of the Furlough Agreement, Paris agreed as follows:

1.      I **understand** that I remain under the jurisdiction of the Department of Public Safety, Oahu Community Correctional Center (OCCC), Community Based Section, and will comply with all R & R, Policies and Procedures governing said agency. . . .

. . . .

9.      I **understand and agree** that I shall be processed as an escapee if I fall into one or more of the following stipulations:

2

> a. Fail to return to the Laumaka Work Furlough Center (LWFC) or OCCC at the designated day and time as stated in this Agreement or on my pass and/or fail to seek permission for an extension of the designated return time.
>
> b. Fail to return to LWFC or OCCC in a timely manner when I am directed to do so regardless of the expiration time stated on the pass.
>
> **I further understand** that should I be listed, as an escapee under any of the aforementioned conditions, my pass will be deemed null and void.

(Formatting altered).

With respect to the above term and condition 9.b., Villanueva explained that if Paris was working and Villanueva told him to come back to Laumaka right away, that Paris had to come back. Paris acknowledged understanding that he would be considered an escapee if he failed to return in a timely manner after Villanueva directed him to do so.

In November 2011, Paris was granted extended furlough privileges, which permitted him to live with his parents rather than at Laumaka. As part of the extended furlough, Paris was given weekly passes and was required to meet with Villanueva at Laumaka once a week -- every Wednesday at 6:00 a.m. On November 30, 2011, Paris entered into an "Extended Furlough Contract" with the State. Villanueva reviewed the Extended Furlough Contract with Paris and explained it to Paris, and Villanueva specifically advised Paris that the Furlough Agreement was still in full effect.

Pursuant to the Extended Furlough Contract, Paris agreed:

> 1. To adhere to all the rules, regulations, and as stated in the Furlough Agreement, Work Furlough Contract, and set by the Corrections Division.
>
> . . . .
>
> 4. To report in person every week to the CM/UM for feedback.
>
> 5. To report in person once a week to obtain a new weekly pass.

3

On Wednesday, January 4, 2012, at 6:00 a.m., Paris appeared at Villanueva's office and met with Villanueva. The procedure used for these meetings was that when Paris reported for his weekly meeting, Villanueva would take the old pass from Paris and give him a new pass that was good for one week. At the January 4, 2012, meeting, Villanueva gave Paris a new pass that expired on January 11, 2012 at 6:00 a.m. and told Paris to come back at that date and time.

On January 11, 2012, Paris did not appear at Laumaka as required for the 6:00 a.m. meeting. Later that day, Paris called Villanueva at Laumaka. Villanueva informed Paris that Paris needed to return to Laumaka by 6:00 p.m. on January 11, 2012. At some point on January 11, 2012, Paris also spoke with Moses Fonoimoana (Fonoimoana), a sergeant at Laumaka. Fonoimoana also told Paris that he had to be back at Laumaka by 6:00 p.m. Although Villanueva waited until 9:00 p.m. that day for Paris, Paris did not return to Laumaka.

Paris remained at large from January 11, 2012, through February 2, 2012. On February 2, 2012, at about 1:30 a.m., Honolulu Police Department Officer Waldron Chung (Officer Chung) stopped a car for "[u]nsafe lane changing." The driver told Officer Chung that he did not have any identification but that his name was "John J. Rivera." The driver also gave Officer Chung a birth date. Officer Chung ran a check of the name provided by the driver but was unable to find a matching person. A passenger in the car informed Officer Chung that the driver was Paris, and Paris then admitted his identity to Officer Chung. Officer Chung ran Paris's name through dispatch, learned that Paris was an "outstanding escapee," and arrested Paris.

DISCUSSION

I.

Paris contends that the amended felony information charging him with second-degree escape was "fatally insufficient"

4

because it failed to allege the definitions of the terms "custody" and "detention facility." We conclude that the charge was sufficient.

The charge against Paris stated in relevant part:

> On or about the 11th day of January, 2012, to and including, February 2, 2012, in the City and County of Honolulu, State of Hawaii, EUGENE PARIS, Jr. also known as Eugene J.E. Rivera, Jr., did intentionally escape from a correctional or detention facility or from custody, thereby committing the offense of Escape in the Second Degree, in violation of Section 710-1021 of the Hawaii Revised Statutes.

During closing argument, the State informed the jury that it was proceeding only on the theory that Paris had escaped from custody. We therefore confine our discussion to whether the failure to allege the definition of "custody" rendered the charge insufficient.

HRS § 710-1000 (2014) defines "custody" to mean "restraint by a public servant pursuant to arrest, detention, or order of a court." In addition, the Hawai'i Supreme Court has held that because the Legislature did not define the term "custody" to mean only actual custody, the term does not require that the defendant be "in actual physical custody or under immediate control and supervision of a guard." State v. Smith, 59 Haw. 456, 462, 583 P.2d 337, 342 (1978). The definition of the term "custody" as set forth in the statute and construed by the supreme court does not create an additional essential element. The definition of custody applicable to the escape offense is also consistent with the commonly understood meaning of "custody," which is broad enough to encompass the restrictions and conditions imposed on an inmate on extended furlough. The dictionary and thesaurus definitions of "custody" include: "keeping; guardianship; care"; "the keeping or charge of officers of the law"; "legal restraint"; "[t]he function of watching, guarding, or overseeing." Dictionary.com, http://dictionary.reference.com/browse/custody (last visited Jul. 29, 2015); The Free Dictionary, http://www.thefreedictionary.com/custody (citing

The American Heritage Roget's Thesaurus (2014)) (last visited
Jul. 29, 2015).  Accordingly, we conclude that the failure to
allege the definition of "custody" did not render the charge
insufficient and that the charge gave Paris fair notice of the
accusation against him.  See State v. Mita, 124 Hawai'i 385, 392,
245 P.3d 458, 465 (2010) ("[T]he State need only allege the
statutory definition of a term when it creates an additional
essential element of the offense, and the term itself does not
provide a person of common understanding with fair notice of that
element.").

II.

Paris argues that there was insufficient evidence to
support his conviction because the State failed to prove that
Paris escaped from custody.  We disagree.

In Smith, the supreme court affirmed the second-decree
escape conviction of Smith who had failed to return to the Hawaii
Youth Correctional facility by the required time after being
released on a day pass.  Smith, 59 Haw. at 457-58, 583 P.2d at
339-40.  The supreme court held that under these circumstances,
Smith had escaped from custody.  The supreme court stated: "While
the facility did not have actual physical control over the
appellant at the time he is alleged to have escaped, it had
control and custody in the sense that appellant was released on
furlough not as a free person but as one legally bound by
restrictions."  Id. at 463-64, 583 P.2d at 343.

In support of its decision, the supreme court quoted a
federal appeals case in which the federal court stated that "'[a]
person may still be in custody, even though not under constant
supervision of guards, so long as there is some restraint upon
his complete freedom.'"  Id. at 463, 583 P.2d at 342 (quoting
United States v. Rudinsky, 439 F.2d 1074, 1076 (6th Cir. 1971)).
The supreme court also cited with approval a Delaware case in
which the Delaware court held that the failure to return from

6

furlough constituted escape from custody because a "furlough merely extends the limits of custody according to its terms. . . . [A] prisoner [released on furlough] is clearly not free from restraint; 'he is deemed to be aware that his movements are restricted according to the limitation of time, place, and purpose imposed by the terms of the furlough.'" Id. (citing Smith v. State, 361 A.2d 237, 239 (Del. 1976)); see also State v. Kealoha, 71 Haw. 251, 253, 787 P.2d 690, 691 (1990) (holding that a prisoner who failed to return at the expiration of her furlough, without a legitimate excuse, was guilty of escape).

Here, the evidence showed that Paris understood that in being granted furlough privileges, he remained under the jurisdiction of the Department of Public Safety; that he would be processed as an escapee if he failed to return to Laumaka as required by his furlough pass or as directed by Laumaka officials; and that he was required to report to Laumaka every week to obtain a new furlough pass. At his weekly meeting on January 4, 2012, Paris was instructed to return to Laumaka on January 11, 2012, and he was issued a new furlough pass that expired on January 11, 2012, at 6:00 a.m. Paris failed to appear as required on January 11, 2012. He was directed that day by Laumaka officials to return to Laumaka by 6:00 p.m., but remained at large. When Paris was encountered by Officer Chung on February 2, 2012, he gave Officer Chung a false name before ultimately being arrested. We conclude that there was sufficient evidence to support Paris's conviction.

III.

Paris argues that the Circuit Court erred in denying his motion for mistrial which was based on the prosecutor's closing argument. Paris contends that the prosecutor engaged in misconduct by misstating the intentional mental state required for the charged escape during closing argument by referring to what Paris knew and understood. Paris's argument is without merit.

7

The Circuit Court instructed the jury that the State was required to prove that Paris acted intentionally. In addition, at the beginning of his closing argument, the prosecutor directed the jury's attention to the Circuit Court's instruction on the offense elements, including the requirement that the State prove that Paris acted intentionally. The prosecutor also used the terms "intentionally" and "intended" to describe Paris's state of mind. The prosecutor's reference to what Paris knew and understood did not misstate the required mental state or constitute misconduct. Evidence that Paris knew and understood the condition of his furlough, including knowing and understanding that he would be processed as an escapee if he failed to return to Laumaka as required by his furlough pass or as directed by Laumaka officials, was relevant to proving that he acted intentionally in escaping from custody.

IV.

Paris argues that the Circuit Court erred in giving the jury the following instruction:

> An escape can be perpetrated by a person even though he is not in actual physical custody or under immediate control and supervision of a guard. A person may be deemed to be in custody when released from a correctional or detention facility on furlough and legally bound by restrictions.

The instruction is based on the Hawaiʻi Supreme Court's decision in Smith, 59 Haw. at 462-64, 583 P.2d at 342-43, and is a correct statement of the law. We conclude that the Circuit Court did not err in giving the challenged instruction.

V.

Paris argues that the Circuit Court erred by failing to apply the doctrine of judicial estoppel to preclude the State from arguing at trial that the furlough agreements were contracts. We disagree.

8

Paris moved pretrial to dismiss the escape charge, contending that the Department of Public Safety (DPS) should have followed administrative polices and sought administrative remedies that would have precluded the DPS from pursuing prosecution of Paris for escape. In its written opposition to Paris's motion, the State argued that the administrative policies cited by Paris were discretionary and did not preclude the DPS from pursing prosecution of Paris. The State did not contend in its written opposition that the furlough agreements were not contracts. However, at the hearing on the motion, in addition to largely submitting on the State's memorandum in opposition, the prosecutor somewhat curiously asserted that: "the State would argue that there was no contract, no legal consideration that was given or made by the defendant in this case, it was simply just notice of terms and conditions whether or not he wanted to abide by them or not." The Circuit Court denied Paris's motion without stating any specific reasons. Thereafter, Paris moved in limine to preclude the State from referring to the furlough agreements as contracts. The Circuit Court denied the motion before the opening statements at trial.

A trial court has discretion on whether to invoke the doctrine of judicial estoppel. Langer v. Rice, No. 29636, 2013 WL 5788676, at *4 (Hawai'i App. Oct. 28, 2013) (MOP). The record does not show that the Circuit Court actually accepted or relied upon the prosecutor's curious assertion that the furlough agreements were not contracts in denying Paris's pretrial motion to dismiss. See id. at *5 (referring to the elements for judicial estoppel). In addition, the State's proof at trial did not depend on a finding that the furlough agreements were contracts; instead, the State relied upon the furlough agreements to show that Paris had notice and knowledge that he was required to appear at Laumaka on January 11, 2012, and intentionally failed to appear. Under these circumstances, we conclude that

9

the Circuit Court did not abuse its discretion in failing to apply the doctrine of judicial estoppel.

CONCLUSION

We affirm the Circuit Court's Judgment.

DATED:  Honolulu, Hawaiʻi, July 31, 2015.


On the briefs:


Marcus Landsberg, IV
(Landsberg Law Office)
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

Chief Judge


Associate Judge


Associate Judge